849 P.2d 1071

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Manuel CHAVEZ, Defendant–Appellant.**

No. 13,231.

Court of Appeals of New Mexico.

March 27, 1992.

Certiorari Granted May 29, 1992.

Certiorari Quashed March 30, 1993.

Tom Udall, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Susan Roth, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

*Opinion*

PICKARD, Judge.

Defendant appeals the sentence imposed after he pleaded guilty to one count of conspiracy to commit armed robbery, one count of aggravated battery, and one count of conspiracy to commit aggravated battery, all arising out of an attack on an eighty-one-year-old man. The trial court imposed the basic sentence for each crime and also imposed a two-year enhancement to each basic sentence pursuant to NMSA 1978, Section 31–18–16.1 (Repl.Pamp.1990). That section provides for sentence enhancement when elderly or handicapped people are intentionally injured in the commission of certain crimes. The trial court ordered that the enhanced basic sentences be served consecutively. The sole issue raised ·by defendant on appeal is whether the trial court erred by imposing the enhancements consecutively instead of concurrently. The resolution of the issue depends on the interpretation of Section 31–18–16.1(C) and raises a matter of first impression. We affirm.

Section 31–18–16.1(C) provides that "[a]ny alteration of the basic sentence of imprisonment pursuant to the provisions of this section shall be served concurrently with any other enhancement alteration of basic sentence pursuant to the provisions of the Criminal Sentencing Act [31–18–12 to 31–18–21 NMSA 1978]." Each side argues that the plain meaning of the statute and legislative intent support its position.

Defendant contends that Section 31–18–16.1(C) applies to prohibit consecutive enhancement when more than one sentence is enhanced under it, because the words "any other enhancement alteration of basic sentence" plainly encompass enhancements of more than one sentence. Defendant also argues that the rules of strict construction and lenity support the construction more favorable to him.

The state contends that in enacting Section 31–18–16.1(C) the legislature did not intend to address enhancements of multiple basic sentences and the second reference in Section 31–18–16.1(C) to "basic sentence" plainly shows that the section only addresses multiple enhancements of a single sentence. The state suggests that the statutory construction for which defendant contends conflicts with established case law, which treats a basic sentence together with any enhancements as a single sentence, and other cases in which this jurisdiction has rejected a "single transaction" theory of sentencing.

Contrary to the parties' contentions, we do not find the plain meaning of the statute enough to resolve this case. However, we conclude that the state's reading of the statute is more reasonable in light of its express language, its relationship to other like statutes, the legislative environment, the legislative history, and the law in existence at the time the statute was enacted. *See generally State v. Alderette*, 111 N.M. 297, 299, 804 P.2d 1116, 1118 (Ct.App.1990) (legislature is presumed to know the law and existing judicial pronouncements). Section 31–18–16.1(C) uses the words "basic sentence" twice. Because the article "the" precedes the first occurrence, it makes sense that the second reference, which lacks an article, should refer to "the basic sentence" as well. Additionally, it appears to us that the plain meaning of the word "other" is a reference to enhancements other than the one appearing in Section 31–18–16.1, e.g., habitual offender enhancements and firearm enhancements.

We are reinforced in our view by a review of sentencing provisions generally. Each is written in the singular. The basic sentence statute provides, "If a person is convicted of *a* noncapital felony, *the* basic sentence of imprisonment is as follows...." NMSA 1978, § 31–18–15(A) (Repl.Pamp.1990) (emphasis added). The various enhancement statutes provide the following: (1) "The court may alter *the* basic sentence as prescribed in Section 31–18–15 NMSA 1978 upon a finding by the judge of any mitigating or aggravating circumstances surrounding *the* offense...."

NMSA 1978, § 31–18–15.1(A) (Repl.Pamp.1990) (emphasis added); (2) "When ... a firearm was used in the commission of *a* noncapital felony, *the* basic sentence ... shall be increased...." NMSA 1978, § 31–18–16(A) (Repl.Pamp.1990) (emphasis added); (3) "When ... in the commission of *a* noncapital felony a person sixty years of age or older or who is handicapped was intentionally injured, *the* basic sentence ... shall be increased...." Section 31–18–16.1(A) (emphasis added); and (4) "Any person convicted of *a* noncapital felony ... who has incurred one prior felony conviction ... is a habitual offender and his basic sentence shall be increased...." NMSA 1978, § 31–18–17(B) (Repl.Pamp.1990) (emphasis added). Thus, when the legislature refers to an alteration of the basic sentence in Section 31–18–16.1(C), we can only conclude that it is following the standard pattern and referring to the same singular sentence for a singular crime used in other statutes.

We note that Section 31–18–16.1(C) was part of the original enactment of this particular enhancement provision. At the time of its enactment, the legislature had provided that the enhancement was to be the first year or years served and that it could not be suspended or deferred. 1980 N.M.Laws, ch. 36, § 1. The former provision was consistent with the firearm enhancement, and the latter was consistent with both the firearm enhancement and habitual offender enhancement. *See* §§ 31–18–16, –17. If the enhancement pursuant to Section 31–18–16.1 was to be the first year or years served and if it could not be suspended or deferred, then of necessity it had to be served concurrently with the firearm enhancement. When the legislature amended Section 31–18–16.1 in 1989 to provide for enhancement when a handicapped person was intentionally injured, it deleted the requirements that the enhancement be the first year or years served and that it not be suspended or deferred. Nonetheless, Section 31–18–16.1(C) was not altered. While this supports defendant's lenity argument, we do not be-

lieve it necessarily requires the result defendant advocates. It simply means that the trial court may suspend or defer enhancements under Section 31–18–16.1 and that, if there are other enhancements to a sentence, e.g., firearm or habitual offender, the enhancement under Section 31–18–16.1 shall be served concurrently with them. We do not, therefore, believe the ambiguity that may exist in Section 31–18–16.1(C) is enough to warrant the application of the rule of lenity. *Cf. Swafford v. State,* 112 N.M. 3, 15, 810 P.2d 1223, 1235 (1991) (lenity is not indicated where legislative intent to punish separately can be found through canons of construction).

Nor do we believe that the out-of-state cases cited by defendant offer much guidance. They do show that, generally, limitations in punishment are evidence of legislative intent. *See Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980); *State v. Treadway,* 558 S.W.2d 646 (Mo.1977) (en banc), *cert. denied,* 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978), *overruled on other grounds by Sours v. State,* 593 S.W.2d 208 (Mo.1980) (en banc), *vacated,* 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980). However, given the very different statutes and language involved in those cases, they are of little help in this case.

Finally, we look to the law at the time Section 31–18–16.1 was amended. At that time, the law was clear that a sentence and its enhancements were one continuous sentence. *State v. Bachicha,* 111 N.M. 601, 808 P.2d 51 (Ct.App.1991); *State v. Mayberry,* 97 N.M. 760, 643 P.2d 629 (Ct.App. 1982). In many ways, defendant is suggesting that the legislature intended to adopt a "single transaction" scheme of sentencing through Section 31–18–16.1(C). However, we do not agree with such an interpretation of the legislature's motives. We believe that if the legislature intended such a result, it would have clearly said so. *Cf. Ruybalid v. Segura,* 107 N.M. 660, 666, 763 P.2d 369, 375 (Ct.App.1988). We also note that the "single transaction" theory has been previously rejected in the area of firearm enhancements. *See State v. Espinosa,* 107 N.M. 293, 756 P.2d 573 (1988);

*State v. Kendall,* 90 N.M. 236, 561 P.2d 935 (Ct.App.), *rev'd on other grounds,* 90 N.M. 191, 561 P.2d 464 (1977). New Mexico case law has rejected the contention that when several crimes are committed with a firearm during the same transaction, the firearm enhancement should only be applied to one of the crimes and not all of them. *Id.*

Although defendant is correct that statutes are strictly construed against the state, in this case we believe that the legislative history of the statute, combined with the case law and other statutory language which existed at the time the statute was adopted, supports the conclusion that the legislature only intended Section 31–18–16.-1(C) to apply to situations in which a single basic sentence is subject to multiple enhancements. We do not believe that the legislature intended to have Section 31–18–16.1(C) apply to situations in which several basic sentences arising out of the same incident are all subject to an enhancement pursuant to Section 31–18–16.1.

Accordingly, we affirm defendant's judgment and sentence.

IT IS SO ORDERED.

MINZNER and BLACK, JJ., concur.